HENRY F. MILLER, Appellant, *v.* CHARLES PHILIP EASTON, Respondent.

Supreme Court, Appellate Term, First Department, January 15, 1926.

**Judgment — summary judgment — motion under Rules of Civil Practice, rule 113, denied where independent counterclaim raises issue for jury.**

A motion by the plaintiff for summary judgment, under rule 113 of the Rules of Civil Practice, in an action on a promissory note, should be denied where the

defendant interposes a counterclaim, independent of plaintiff's cause of action, which raises an issue for the jury as to whether or not there was an implied agreement to pay for services rendered to the plaintiff by the defendant.

CHURCHILL, J., dissents, with opinion.

APPEAL by plaintiff, by permission, from an order of the Municipal Court of the City of New York, Borough of Manhattan, Sixth District, denying his motion for summary judgment.

*Robert M. Miller* [*Henry F. Miller* of counsel], for the appellant.

*Charles Philip Easton*, respondent in person.

BIJUR, J.   Although it has been decided in *Chelsea Exchange Bank* v. *Munoz* (202 App. Div. 702) that rule 113 of the Rules of Civil Practice may be invoked by the plaintiff even though defendant sets up a counterclaim, the fact remains that where the counterclaim, as in the instant case, is independent of plaintiff's cause of action, the court is practically called upon to condemn a defendant's cause of action.   The extension of the rule to such a case is based on the bare words of the rule itself because logically there seems to be no reason why a party who sets up a counterclaim should have it either measured or disposed of by a standard or method other than that applicable to plaintiff's own cause of action.

The English cases cited in the *Chelsea* opinion indicate with what restrictions and reluctance the corresponding rule is administered in the English courts.   In one (*Sheppards & Co.* v. *Wilkinson & Jarvis*, 6 T. L. R. 13) it is said: " The court had no power to try such a counterclaim on such an application, but if they thought it so far plausible that it was not unreasonably possible for it to succeed if brought to trial, it ought not to be excluded."   In the case before us, the facts of which are sufficiently stated in the dissenting opinion, it is quite apparent that defendant's services, concededly rendered to plaintiff, were valuable and the ordinary presumption obtains that defendant was entitled to compensation therefor.

The controversy is the result of plaintiff's contention that defendant expressly agreed to render these services gratuitously, which defendant denies.   To overcome the presumption in defendant's favor, plaintiff relies upon the circumstance that defendant during the intervening three or four years never made any claim for compensation, but on the contrary, sought the loan, sued upon, from the plaintiff as a favor.   Without attempting a comprehensive review of the considerations which might affect the minds of the triers of the facts, it. suffices to point out that a jury might well believe that defendant was actuated, whether rightly or not, by the embarrassment of friendly relations in not proffering a formal

claim for his services, or that he delayed making a demand in the hope of receiving a reciprocal favor in return. It might indeed conclude that plaintiff's insistence on repayment of the money as a loan was as inconsistent under the circumstances as plaintiff would have the court believe has been the course of conduct of defendant. Of course, the mere fact that defendant has made no formal claim for payment within the period allowed by statute cannot be determinative of the validity of his claim, otherwise we would be adopting a statute of limitations different from that prescribed by law.

The case presents to my mind an issue which is not only peculiarly but perhaps exclusively adapted to decision by jury after defendant has been heard, and certainly not one which should be disposed of summarily on affidavits. It was said in *Saw* v. *Hakim* (5 T. L. R. 72), also cited in the *Chelsea* case, that MANISTY, J., "had the greatest distrust of affidavits upon disputed questions of fact and would never consent to try such questions upon affidavit."

In my opinion, therefore, the order denying the motion for summary judgment should be affirmed, with costs.

Order affirmed, with ten dollars costs.

LEVY, J., concurs; CHURCHILL, J., dissents in opinion.

CHURCHILL, J. (dissenting). Plaintiff sued on a promissory note made by defendant to the order of plaintiff. The answer did not deny the making or delivery of the note but set up two counterclaims for professional services alleged to have been rendered to plaintiff in 1921 and 1922. The note was for $500 and interest. The counterclaims are for $600. The summons is dated and the complaint was verified on May 27, 1925. The answer was filed on June 15, 1925. Thereafter plaintiff moved for summary judgment. His motion was denied and he now appeals pursuant to leave given by the court below.

From the affidavits submitted on the motion it appears, without contradiction, that both parties are attorneys at law; that in 1921 and 1922 plaintiff was the attorney for the committee of an incompetent person and had made application to the court in each of those years to have the value of his services, rendered to the committee, determined and to secure payment therefor; that a referee had been appointed upon each application and plaintiff, desiring to offer expert testimony as to the value of his services, requested defendant to testify for him before the referee, which the defendant did; that for some time prior to 1921 the parties had been intimate friends, members of the same country club, and the defendant had at times consulted plaintiff with respect to legal questions arising in defendant's practice and plaintiff had given his time and opinions

on such matters as a favor and a friendly act, it being understood that no charge was to be made.

The only issue between the parties concerns the agreement or understanding under which the defendant's services were rendered. Plaintiff says that he asked defendant whether he would testify as a favor to plaintiff and that defendant consented to testify gratuitously and as a favor. Defendant denies that he was asked or consented to testify as a favor or gratuitously. He says that on the first of the two occasions in question plaintiff came to defendant's office, said that he had instituted the first proceeding already mentioned and that he would like to secure defendant's services to testify for him; that plaintiff said it would be necessary for defendant to become acquainted with the facts, to read testimony and a hypothetical question of considerable length; that defendant agreed to perform such services and did so and that plaintiff was allowed a fee of $50,000. As to the second proceeding defendant says that plaintiff came to defendant's office " and engaged him to testify " therein; that he had several interviews with plaintiff, examined and familiarized himself with a large number of pages of testimony, appeared before the referee and testified, and that plaintiff was allowed a fee of $20,000.

Thus there is no claim that there was any express agreement that defendant was to be compensated for his services. The issue is, therefore, narrowed to the question whether, under the circumstances, there was an implied agreement to pay for those services. The only question on the motion, and the question before us, is whether there is any real issue on that point. (*General Investment Co.* v. *Interborough R. T. Co.*, 235 N. Y. 133, 142, 143.)

I will now state the undisputed facts bearing on that question.

When this action was commenced over four years had elapsed since defendant had testified in the first proceeding and over three years since he had testified in the second. Never, at anytime during those years had defendant made any claim that he expected or was entitled to any compensation. In August, 1924, defendant applied to plaintiff for a loan of $500. Plaintiff lent the money and took defendant's note at three months. That note was twice renewed, interest being paid and new notes being given. A third renewal was asked and refused. This action was then brought and for the first time a claim was made in the answer that plaintiff was indebted to defendant in a sum exceeding the amount of the note for services which had been completely performed long before defendant had asked for the loan. In his letter of August 18, 1924, requesting the loan, defendant wrote: " There is no reason why you should do this. If you will I will be greatly obliged." In requesting the

first extension defendant wrote: " If you can possibly do so I wish you would be good enough to renew this note for three months. The reason I ask this favor is because I am still under extraordinary expenses." In acknowledgment of the extension defendant wrote: " Please let me sincerely thank you for your great kindness and consideration." In asking a second extension defendant wrote: " Much as I regret it I shall have to ask again for your indulgence * * *. If you can give me three months more I can certainly pay you then * * *. I hope you can do this for me and please believe I am more than grateful for your consideration." In asking a still further extension, three months later, defendant wrote: " If your patience and kindness are not quite exhausted you can greatly assist by giving, at this critical time for me, just one more extension. I am ashamed to have to ask this again." The requested extension was refused, whereupon defendant wrote, on May 24, 1925: " In view of your letter I have really done my best to get in enough to pay my note tomorrow. I have not been successful. I have money coming in the first week in July which will enable me to pay. Please, therefore, postpone any contemplated action until that time. * * * I deeply regret my present financial condition and assure you you will not lose by granting the postponement."

On June 15, 1925, defendant verified his answer, the contents of which have been already stated. Little else need be said. The answer is so patently a fraud and an imposition on the court that it would have been struck out as sham before the rule providing for summary judgments was adopted.

It is suggested in the prevailing opinion that although defendant sought the loan as a favor from his alleged debtor instead of requesting payment of the moneys due him, he may have been actuated by the embarrassment of friendly relations in taking that course. Whatever may be thought of the force of this argument in so far as it relates to the original loan, it can hardly be advanced as an explanation of the repeated requests for renewals of the note. If friendly relations dictated the devious course suggested to secure the loan, certainly they do not explain the subsequent solicitations and promises. But the real answer to all such speculations, whether they be of a greater or less degree of improbability, is that it is not for us to conjure up explanations of defendant's unusual conduct. If our credulity was to be tested in that way it should at least have been done by explanations under oath tendered by the defendant himself. (Rule 113 of the Rules of Civil Practice.)

The order should be reversed, with ten dollars costs, and motion should be granted, with ten dollars costs.